Good morning. Good morning. Pleased to court, James Fife of Federal Defenders, appearing on behalf of the Appellant, Mr. Hassell. I'd like to reserve two minutes of my time for rebuttal. It is Hassell, not JASSO. Oh, Hassell. Hassell, okay. I stand corrected. The most remarkable fact... I used to call them Hacarandas, Hacarandas, but it turns out they're Australian, and it's Jacarandas. It's really Jacarandas. Having grown up in Southern California, I should know. I didn't grow up in San Jose. Okay, sorry, that doesn't come off your time. That's off mine. That's fine. I want to point out the most remarkable thing about this upward departure for underrepresented criminal history is that the district court completely ignored the case law and the guidelines commentary which applies to this kind of departure and fixated instead on the mere extent of the past convictions that is focused on their quantity, not their quality. In the process, the district court committed several legal errors which themselves constitute an abuse of discretion. Also, the district court relied on legally inadequate sources under Shepard v. United States. Since the district court misapplied the guidelines, under Cantrell, there was error at the first stage of the sentencing process which requires a remand for resentencing without a review for overall reasonableness. The case law regarding the departure under 4A1.3 is very clear that there are two factors that have to be considered in order to justify a departure for underrepresented criminal history. Seriousness and likelihood of recidivism. The district court didn't discuss either one of those. When you actually compare the facts of this case that was before the court on the record, it's very clear that neither one of those factors is supported here with support of departure. The cases in the commentary very clearly stress that it's quality, not quantity, that relates to the district. How many felonies and how many misdemeanors? Mr. Hasso, of the non-counted, the uncounted priors which were not, or the only ones which are considerable under this departure, he has no felonies. They were all misdemeanors. And they were all for very... I thought he had two felonies. He has two felonies overall, but those were of course counted in the criminal history score. For the purposes of the departure, only uncounted prior convictions can be considered. Otherwise you would be engaging in impermissible double counting. So he has 22 convictions according to the PSR, but only nine of those are uncounted. And those are the only ones which the judge could legally consider. Well, some people don't have any. So how many do we have to have before, and how much do I have to talk about recidivism when you have it over a period of time and a lot of them? Well, I think... I mean, because, you know, I can say the flip side of it. If someone had no priors, of course, that we totally emphasize. This is a person, Your Honor, that this is the first time that they've ever been before the court. You know, and the other side of it, this is a person that their whole life they've hardly gone more than two months without getting a conviction. So... That's true, Your Honor. That's why it's not... It seems like it's not the number that matters. And, in fact, I can't give you a specific number. We can compare cases. The number over a period of time has to matter on recidivism. For recidivism, possibly. I know... Well, you can see if you have someone that, you know, is 20 years. And, you know, over 20 years, you know, they barely spent three days out of custody. They're in, they're out, they're in. You know, that... I mean, of course it has to matter. It does matter. And I recognize, Your Honor, was in the dissent on bad marriage and that bad marriage held that seriousness was also a consideration that had to be considered under the recidivism problem. Do you know what happened to poor Mr. Bad Marriage? I know that his second time around... He went back and he got more. Yeah. Yeah, he... I mean, he probably shouldn't have, you know... He'd probably now be happy with an affirmance. That could very well be true, Your Honor. I think, though, as a matter for us and for the court and for Mr. Hossow, is that it's important that the proper legal... But it wasn't cert denied, so... Pardon? But it wasn't cert denied that happened after. Oh, yes, that's true. The important thing here is that it is true that possibly on a remand resentencing, Judge Thompson would consider some of these same features. I think there's several reasons why a remand would not necessarily lead to the same sentence. There's some very specific reasons. For once, if the departure was error, and therefore the guideline sentence would be different on the second time around, Judge Thompson is required by 3553A to consider that new lower guideline sentence. So that's one factor which might lead to a lower overall sentence. It's now clear that it's unanimous, not only the defense and the prosecution, but also probation now agrees that 33 months was the appropriate sentence. Probation didn't agree to 33 only because of their internal policy. They didn't factor in the fast track deduction. Isn't it up to the judge to decide, though, what the appropriate sentence is, not what probation thinks is the recommendation? That's true, Your Honor. Of course, the whole point of having the input of the different parties is for the judge to consider that. I think that's an important factor. Didn't he consider it? I don't believe he did. He read the PSR. I think he read part of the PSR. He certainly paid very much attention to the list of prior convictions. We can't indulge in hyperbole here. We can't say the court didn't read the PSR. I mean, the court liked parts of the PSR better than you liked. But I think when we start saying that a court didn't read it when there's no evidence of that, that's a little bit casting, you know, that's saying a judge isn't, you know, doing what they're supposed to be doing. Well, I apologize to the court. I did mean to imply that Judge Thompson was not doing his job in that regard. I believe that there is a problem with him not applying the specific factors that would apply to this sort of departure. And I think the fact that on a resentencing that all the parties, all the participants would be unanimous if they follow their original recommendations that 33 months was the appropriate sentence, that is a consideration, which, though, of course, as Judge Collins points out, Judge Thompson wouldn't be bound by that, but that is a factor that he would properly consider. Another issue that I- Just going back to there were, what, 10 convictions that weren't scored? Nine. Nine. And my recollection is that one of those was entering a noncommercial dwelling after breaking into the apartment of a witness who saw him throwing chairs into a pool. Is that right? Yes. It wasn't a burglary. As far as I can tell, it was some sort of breaking and entering. The other one was injuring his ex-girlfriend after he knocked her to the ground, hit her head against the wall twice, kicked her, and pushed her on top of their 18-month-old baby. There was some- There was a couple of domestic violence convictions as well. Okay. So- But you're saying that the judge didn't specify those as being serious and, therefore, doesn't count? That's correct, Judge Fischer. The whole problem is that the judge referred to these in bulk, in a generic sense. He just simply said, I've never seen so many convictions, without actually talking about each one individually and talking about whether or not those were serious in the sense that were taken in some of the other cases, like Carrillo-Alvarez and Segura-Del Real and bad marriage. Those cases also- One other question, a fact question, as long as I've interrupted you. Sure. In the- I think this is the PSR. You say that the probation agreed on a 33? They would have, except that they didn't include the fast-track exemption. So when they say guideline range is 41 to 51 months, that's without- Without fast-track. And that's because they have an internal policy not to calculate that. Okay. I see my time is up. Thank you. No, you've got some time. I don't know. Well, I believe I've reserved two minutes. Oh, you've reserved. Okay. You're self-imposed time. You listened to what I said. Thank you. Good morning, Your Honors, and may it please the Court. My name is Joseph Green. I represent the United States. Your Honors, I'd like to- A couple of questions. I think appellant raised a 32H objection in his reply brief. Now, I mean, obviously, you know, we can say too little, too late, since it's the first time in the reply brief, but I'm curious what your response is about whether the appellant was on notice that there was going to be an upward departure, or what's required. Your Honor, the government's prepared to address that argument today. It wasn't raised in the opening brief, and the government has not briefed it yet. But I can respond, Your Honor. Rule 32H requires that the Court give the defendant reasonable notice when it intends to depart upward. In this instance, Judge Thompson- Reasonable and specific notice. Yes, Your Honor. And in this instance, under the circumstances, it was reasonable for Judge Thompson to inform the defendant of its intention to adjust upward at the sentencing hearing. If you look at the facts of this case, this is a fast-track border bus case. The defendant's recommendation, sentencing recommendation, I think demonstrates the fact that the defendant was on notice that this was an individual who would be a candidate for an upward departure on the basis of his criminal history because, unlike most cases, this defendant didn't move for any downward departures. Now, that doesn't alleviate the Court's providing notice to the defendant, but at no time during the hearing did the defendant's attorney say, Your Honor, this is an unfair surprise to us. The defendant didn't have any indication that the Court would adjust upward the defendant's sentence based upon what was contained in the PSR. Instead, the defendant's attorney very adequately and appropriately argued the point. All right. Well, the Court said at the time that the plea was accepted that, you know, apparently the government was okay and the government did follow through and it's what its recommended sentence was. But the judge said, Well, now you understand. I'm the judge. I'm going to decide what it is, right? That's correct, Your Honor. Judge Thompson, during his plea colloquies as a matter of course, and he did so in this instance, made it very clear to the defendant that he was not bound by the party's recommendation. He said something to the effect that he didn't sign the plea agreement, he's not a party to it, and he's not bound by it. So as early as the plea disposition, the defendant would have been on notice that Judge Thompson didn't have the belief that he was bound by the 33-month recommendation.  No, it's not, Your Honor. And why? Shepard's not applicable because in this instance, the 20-year maximum sentence is authorized by the facts that the defendant pled guilty to. The PSR, the pre-sentence report, has no bearing on the maximum sentence, and as a result, there's no Sixth Amendment concerns that come about as a result of the judge's exercising his appropriate discretion to give the defendant a 51-month sentence. Your Honor, I'd like to make one note, and that is in the government's brief, we indicated that the appropriate standard for review would be plain error on the issue of whether Judge Thompson appropriately departed upward. The government concedes that the appropriate standard of review would be abuse of discretion. As I indicated, it was clear that the defendant's attorney at the time of the hearing objected to Judge Thompson departing upward on the basis of the defendant's criminal history. Okay. Just a couple of final points, then, Your Honor, if you don't have any questions, and that is that even if Judge Thompson did not apply the correct standard, which that is not the government's position here today, the seriousness of the offenses, or in particular, the defendant's indicated track record of being a recidivist would have provided an adequate basis for Judge Thompson to depart upward. But even if Judge Thompson did not apply that standard correctly, it's clear in this case that Judge Thompson, in light of the other 3553A factors, would have given this defendant the same sentence. And he said as much when he, in responding to one of the objections to the defendant's prior criminal convictions, Judge Thompson said that that wouldn't make a difference in his ultimate decision in the sentence that he imposed. Thank you very much, Your Honor. Thank you. I'm just pointing out the fact that we did talk about this before, that the government was not going to contest that there was an objection raised. And that was the only context in which the 32H issue was raised in the reply brief, simply to show that counsel was caught unaware and in surprise, and therefore excused her objection. Let me ask you this question. Didn't the plea colloquy itself sort of give the defendant notice that this judge would go all the way up to 20 years? Not necessarily, because the very same language is put in standardly in every plea agreement that, of course, the court is not bound. But the judge specifically told him, I'm not bound by this plea. I'll make the decision about what sentence you're going to get, correct? That's correct, Your Honor. Honestly, I don't know whether that is just Judge Thompson's practice to say that, but that's just a- Probably means it. Apparently he does. So I would say that certainly puts on notice the possibility, but I don't think that's what the notice requirements under 32H and under Burns v. United States was talking about. They're talking about giving counsel the adequate opportunity to meet a sentencing departure. And I would claim even after post-Booker that, as Evans-Martinez indicates, that even post-Booker there's still a very beneficial effect of this for the sake of making sure that all sentencing issues are fairly met on an adversarial basis by all the parties. I don't think it just sort of indicates it. It actually indicates it. Well, not only for departures, but I would say also for variances from the guidelines. And I realize that might be an extension of that, but I think the same reasoning would apply. That's for the full and fair airing of sentencing issues. It only makes sense that the court specifically indicate that and give all parties an opportunity to address that. As for the Shepard issue, I would say that the case law, especially more recent case law, indicates that Shepard applies more broadly to the finding, factual findings of predicate priors used in sentencing. And contrary to Mr. Green's suggestion that this court can go on and do a reasonableness analysis, I would hold that, indicate that Cantrell, specifically Cantrell and Kilby, specifically state that that is not the case. That this court, if there is material error at the first stage in calculating the guidelines, that's where this court stops and remands. No reasonableness review takes place at that point. Okay. Thank you. Thank you. We appreciate counsel's argument and civility. And the case disargued is submitted.
judges: Fisher, Callahan, Collins